THE VISITATION CONVENT, Respondent, v. ALOIS KLEINHOFFER et al., Defendants; HARMON M. WILCOX, Administrator of the Estate of JOHN O'LEARY, Deceased, Appellant.

St. Louis Court of Appeals, November 15, 1898.

1. **Contract:** PRINCIPAL AND SURETY: CONSTRUCTION OF WRITTEN CONTRACT. Although parties to one part of a contract, as among themselves, may sustain the relation of principal and surety, yet as to the parties to the other part of said contract, where by their written agreement they bound themselves as principals, they will be held as principals.

2. **Evidence:** MOTION FOR NEW TRIAL: PRACTICE, APPELLATE. Where, as in the case at bar, the evidence preponderated in favor of the plaintiffs, and in fact was principally all one way, this court has no hesitancy in affirming the judgment of the trial court in awarding a new trial to plaintiffs.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

W. F. CARTER and W. G. LACKEY for respondent.

Nothing can be considered on appeal from an order granting a new trial save the grounds stated by the court in such order, and the grounds set forth in the motion itself. Standard Milling Co. v. Transit Co., 122 Mo. 269–270. Trial courts have large discretion in granting new trials on the ground that the verdict is against the weight of the evidence, and the appellate courts are very slow to condemn the award of a new trial on such ground. The court below did not err in ruling that the verdict was against the weight of the evidence. Baughman v. Fulton, 139 Mo. 557; Hull v. Railroad, 60 Mo. App. 593; Lionberger v. Pohlman, 16 Mo. App. 397; Lowry v. Orr, 6 Ill. 70, 83. Both Father Phelan and John I. Haynes were competent to testify against Wilcox, administrator of O'Leary, as to all matters pertaining to the contract, and as to all facts in issue, whether occurring before or after O'Leary's death. Fulkerson v. Thornton, 68 Mo. 468; Nugent v. Curran, 77 Mo. 323; Wallace v. Jecko, 25 Mo. App. 315. If it appears from the whole record that the court below committed other errors demanding a new trial its order must be upheld, even though on different grounds from those assigned. Hewitt v. Steele, 118 Mo. 463; Lumber Co. v. Christophel, 59 Mo. App. 80.

GEO. E. SMITH for appellant.

A written certificate or award of damages made by the architects under paragraph twelve of the contract sued on, was a condition precedent to a recovery in this case. Its production in evidence would have made the plaintiff's case, and would have precluded every defense not predicated on fraud or mistake. In the absence of such certificate, there could be no recovery

under the third amended petition, on which the case was submitted. Dinsmore v. Livingston Co., 60 Mo. 241; Williams v. Railroad, 112 Mo. 463; Chapman v. Railroad, 114 Mo. 542; Roy v. Boetler, 40 Mo. App. 213; St. Joseph Iron Co. v. Halverson, 48 Mo. App. 383; Wycoff v. Myers, 44 N. Y. 143; Downing v. O'Donnell, 92 Ill. 559; Kihlberg v. Railroad, 97 U. S. 398. Neither was there any evidence admitted against the administrator which tended to show that the certificate and notice required by paragraph twelve to forfeit the contract were made or served. One of the reasons given by the trial court for granting a new trial was that the verdict was against the weight of evidence. While this is a ground within the sound discretion of the court, appellant is not barred from showing that such discretion was arbitrarily or unjustly exercised. There was no substantial conflict in the evidence given at this trial. Kuenzel v. Stephens, 73 Mo. App. 14; Millar v. Madison Car Co., 130 Mo. 517; Baughman v. Fulton, 139 Mo. 557; Lumber Co. v. Christophel, 59 Mo. App. 80; Hull v. Railway, 60 Mo. App. 593. The other ground assigned by the trial court was that the refusal of the third instruction offered by plaintiff was error. The refusal of this instruction upon the case made, could not have influenced the jury in finding their verdict. The suit was dismissed as to Kleinhoffer at the opening of the trial, for want of service. The jury found for the defendants, Watson and O'Leary, for failure to prove the case alleged. Whether they were principal contractors with Kleinhoffer, or sureties for him, was immaterial under the evidence. The jury found, as they might well have done, that the plaintiff had not complied with the requirements of the twelfth paragraph of the contract sued on. In this paragraph no distinction is made between principal and surety. It is inconceivable how an instruction from the

court that all the defendants were principal contractors, could have had any effect upon the finding and verdict of the jury. The jury found that the plaintiff had failed in proving the case alleged against any and all defendants, as they had a clear legal right to do, upon the evidence given. If the verdict had been against the defendants upon such evidence, it would have been the plain duty of the trial court to have set it aside for want of evidence to support it. The witness Haynes was not a competent witness against appellant. Haynes was employed and paid by respondent. He agreed upon the terms of the contract sued on, drew it up and submitted it to respondent for its approval. He had the contract executed by O'Leary and Watson. From the beginning to the end he acted for respondent as its agent, architect and superintendent. All the negotiations and transactions O'Leary had were with Haynes as respondent's agent, architect and superintendent. Banking House v. Rood, 132 Mo. 256; Williams v. Edwards, 94 Mo. 447; Meier v. Thieman, 90 Mo. 433; Nichols, Shepard & Co. v. Jones, 32 Mo. App. 657; Kuhn v. Ins. Co., 71 Mo. App. 305; McCormick Machine Co. v. Heath, 65 Mo. App. 461.

BLAND, P. J.—The petition in substance states that plaintiff is a corporation; that the plaintiff and defendants on January 22, 1891, entered into a written agreement, whereby defendants agreed to do all the work included in rubble masonry, concrete footing, piers and pilasters, brick and iron work required in the basement and foundation work for plaintiff's new academy and monastery building on Cabanne avenue in the city of St. Louis, agreeable to certain drawings and specifications previously made by plaintiff's architects, and to have said work wholly completed on or before April 23, 1891, for which plaintiffs agreed to pay defend-

ants $7,717. That about February 1, 1891, defendant Alois Kleinhoffer entered upon the performance of the work mentioned in the contract and laid about two hundred cubic yards of concrete footing, worth, when apportioned under the contract, $1,000, which $1,000 was paid to him by the plaintiff, but that the defendants thereafter (March 21, 1891) wholly failed and refused to proceed with the work and abandoned and left said work incomplete and unfinished. That the contract provided that in the event of the defendants' failure or refusal in any respect to prosecute the work, that on such failure, etc., being certified by plaintiff's architect, the plaintiff should be at liberty after three days' written notice to defendants, to provide such labor and material as might be required to finish the work, and to deduct the cost thereof from any money that might be due on defendants' contract, and that should the cost thereof exceed such unpaid balance, then defendants should pay such excess to plaintiff, and that said expense incurred by the plaintiff as herein provided for furnishing material and finishing said work should be audited and certified by the architect, which certificate should be conclusive on parties, and that these terms as to notices and furnishing architect's certificates were complied with, and that for furnishing material and procuring work, necessary to finish and complete defendants' contract work, it was compelled to pay and did pay for the whole of said work and material $9,713 (an itemized account of which is set forth in the petition), by reason of which it says it is damaged in the sum of $1,996.90, for which with interest it asks judgment. John O'Leary, one of the makers of the contract, died before the institution of the suit and his administrator H. M. Wilcox was made a party, who as such answered:

I. That his intestate became a party to the contract sued on as surety and not as principal; that the plaintiff for a valuable consideration, settled with and released Kleinhoffer, the principal in the contract, from all liability under said contract whereby he says his intestate was also released.

II. That after the execution of the contract, plaintiff and Kleinhoffer without the knowledge or consent of O'Leary changed the contract, whereby O'Leary was released.

III. That the plaintiff on or about April 20, 1891, compromised and settled for a valuable consideration its claim under said contract with O'Leary.

IV. That Kleinhoffer, his principal, had purchased and had on plaintiff's grounds at the building a large amount of stone, sand, lime and other building material, which plaintiff took possession of and used in said building, for which it had rendered no account, nor given any credit. The plaintiff took possession of the work and wrongfully refused to permit Kleinhoffer to proceed with the work under his contract. To this answer a reply was filed denying the answer. Defendant Watson's answer was a general denial. The other defendants were not served with process and the suit as to them was dismissed. A trial was had by a jury, who returned a verdict for the defendants. In due time plaintiff filed the following motion for a new trial:

"*First*. The verdict in said cause is against the evidence, against the weight of evidence, and against the law under the evidence.

"*Second*. The verdict was for the wrong party.

"*Third*. Because the verdict was dictated by passion and prejudice on the part of the jury and was not responsive to the issue herein.

"*Fourth*. The court erred in rejecting competent, relevant and material evidence offered by the plaintiff.

"*Fifth.* The court erred in refusing the instructions asked by plaintiff."

Said motion was by the court sustained for the following reasons: "The court having heard and duly considered the plaintiff's motion for a new trial heretofore filed and submitted herein doth order that said motion be sustained and that the verdict and judgment herein be set aside and vacated on the ground that the court erred in refusing instruction which declared that the defendants were original contractors and on the ground that the verdict is against the weight of evidence in the case." From the order awarding a new trial Wilcox (administrator of O'Leary), deceased, alone appealed.

The instruction to which the court refers in its order granting a new trial is as follows: "The court instructs the jury that defendants Watson and O'Leary signed the contract as co-partners as between the plaintiff and themselves, and are not released by reason of any change that may have been made."

The contract referred to in the pleadings and read in evidence on the trial reads in the opening paragraph as follows: "This agreement made the twenty-second day of January, 1891, by and between Alois Kleinhoffer as principal and Selmer Watson and John O'Leary as sureties, parties of the first part (hereinafter designated the contractors), and the Visitation Convent, a corporation, party of the second part (hereinafter designated the owner). Witnesseth, that the contractors, being the said parties of the first part, in consideration of the covenants and agreements herein contained on the part of the owner, being the said party of the second part, do covenant, promise and agree with the said owner, in manner following, that is to say." Then follows sixteen clauses, none of

CONTRACT.

which are material to the issues in this case, except the twelfth one, which reads as follows:

"Should the contractors at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements on their part herein contained, such refusal, neglect or failure being certified by the architects the owner shall be at liberty, after three days' written notice to the contractors, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractors under this contract; and if the architects shall certify that such refusal, neglect or failure is sufficient ground for such action, the owner shall also be at liberty to determine the employment of the contractors for the said work and to enter upon the premises and to take possession of all materials thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractors he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractors, but if such expense shall exceed such unpaid balance, the contractors shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work and any damages incurred through such default, shall be audited and certified by the architects, whose certificates thereon shall be conclusive upon the parties."

The contract for rubble masonry, etc., appears to have been let to Kleinhoffer; he did some work, and was paid $1,000, whereupon he abandoned the work and left the city and never returned, nor did he provide for the completion of his work under the contract. The respondent had a building committee, who represented it in all matters pertaining to contracts for the erection of its building. After Kleinhoffer abandoned his contract, the evidence tends to show that Watson and O'Leary were notified of the fact in compliance with the twelfth clause of the contract. Certain it is that they were present at a meeting of the building committee, the architect being present, and were offered the privilege of taking up the work where Kleinhoffer left off and completing the same under the contract; this they declined to do, whereupon the building committee took possession of the materials left on the premises by Kleinhoffer and proceeded to let the completion of the work to the lowest bidder. On the completion of the work the architect certified to the respondent that the entire cost of the work and materials provided for in the contract was $9,713, being $1,996.90 in excess of the amount for which Kleinhoffer agreed to do the work. The evidence offered by defendants showed the quantity and approximate value of the material left on the ground by Kleinhoffer, and plaintiff's evidence tended to prove that the value of this property was credited to Kleinhoffer on the contract. The notice and certificate provided for by article 12 of the contract were not produced, for the reason, as claimed, they had been lost or destroyed, of which latter fact evidence was offered, and evidence of their contents was given. To this the defendants objected on the ground that sufficient proof of their loss or destruction was not made to warrant secondary evidence of their contents. Defendants Watson and O'Leary attended

a meeting of the building committee, held after the abandonment of the contract by Kleinhoffer, in pursuance to notice of some kind, at which meeting the abandonment was discussed, and the fact that Kleinhoffer had left the city, and they were asked if they would proceed to complete the contract. They had notice of the abandonment, and by attending the meeting of the building committee to discuss the matter of abandonment, waived a written certificate of notice of abandonment, and it is immaterial under these circumstances whether they received one or not. The architect testified that he made out and signed the certificate of cost provided for by article 12 of the contract and sent it to the building committee, and had it personally served on O'Leary and Watson, and a copy left at Kleinhoffer's house. James B. Haggerty testified that he served the certificate on O'Leary and Watson and gave it to the sisters of the convent; that he had gone out to the convent and got all the papers (pertaining to the building), all of which had been turned over to the sisters, and that he searched diligently for the certificate among the papers, but could not find it; that he inquired for it, and that the certificate had been destroyed. We think that this was sufficient proof to authorize proof of the contents of the certificate by oral testimony. The testimony of Father Phelan, as to what took place at meetings of the building committee when O'Leary was present, was withdrawn from the consideration of the jury as testimony against Wilcox, O'Leary's administrator, but the fact that O'Leary did attend the meeting and offered to go on with Kleinhoffer's contract if Watson would agree to do so, was testified by the architect Haynes, who was present at the meeting, and who was a competent witness. As between Kleinhoffer and O'Leary and Watson, the latter were Kleinhoffer's sureties, but not so as to the

respondents; by their written contract they bound themselves as principals, contracted as principals, and should be held as principals, for such was the evident intent and purpose of the parties as derived from the terms of the contract. The evidence preponderated in favor of the plaintiffs, in fact it was principally all one way, and we have no hesitancy in affirming the judgment of the trial court in its award of a new trial. All concur.

COSTRUCTION of contract: principal and surety.